ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY:   SHERLE R. FLAGGMAN (019079)
      MAXINE S. MAK (031158)
      Deputy County Attorneys
      flaggmas@mcao.maricopa.gov
      makm@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 W. Madison
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendant Penzone

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jose Rodriguez | No. CV-20-00344-PHX-DLR (JFM) |
| Plaintiff, | |
| v. | **DEFENDANT PENZONE'S MOTION TO DISMISS** |
| Jeri Williams, et al., | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Penzone moves to dismiss Plaintiff's First Amended Complaint for failure to state a claim.

**Background.**   Plaintiff was arrested on March 12, 2019 by two City of Phoenix police officers for (1) interfering with judicial proceedings and (2) possession of drugs and drug paraphernalia. Plaintiff was booked into the MCSO Jail. During the booking process, Plaintiff was identified, albeit mistakenly, as having an outstanding 2010 warrant for

aggravated assault and failure to appear in Coconino County. During the MCSO booking process, Plaintiff was also charged with the crimes identified in the Coconino County warrant.[1] It was later determined that the Coconino County warrant was for the arrest of Jose R. Meza a/k/a Jose Meza Rodriguez; although they have similar names and the same birthdate, Plaintiff is neither Jose R. Meza nor Jose Meza Rodriguez.

Plaintiff made is initial court appearance in Maricopa County Superior Court within a few hours; he was released on his own recognizance on the Phoenix-initiated drug and judicial interference charges, and he was held on a $10,000 bond on the Coconino County "page 2" charges. Several days later, Plaintiff was transported to Coconino County for a court appearance and the charges arising from the warrant were dismissed.

Plaintiff has sued the City of Phoenix and its arresting officers; Maricopa County Sheriff Penzone, and Coconino County Sheriff Driscoll. As to Sheriff Penzone, Plaintiff fails to state a claim and Sheriff Penzone should be dismissed from this action.

**III.    Legal Standard.**  To avoid dismissal under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009), citing *Twombly,* 550 U.S. at 556. In analyzing whether a claim has facial plausibility, a court will "accept as true all well-pleaded allegations of material fact and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft,* 556 U.S. at 678. "Threadbare recitals of the

---

[1] The additional charges based on the Coconino County warrant are referred to as the "page 2" charges.

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Dismissal for insufficiency of a complaint is proper if the complaint fails to state a claim on its face. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980).

**IV.   Counts Ten and Twenty of Plaintiff's First Amended Complaint Fail to State Fourth Amendment Claims.** In Count Ten of his First Amended Complaint, Plaintiff alleges that his rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution were violated as a result of Sheriff Penzone's policies, or lack thereof, for investigating the identity of persons charged pursuant to a warrant. In Count Twenty, Plaintiff alleges Fourth and Fourteenth Amendment violations arising from unnamed MCSO officers engaging in "judicial deception." The allegations fail to state Fourth Amendment violations. When a plaintiff challenges the length of his pretrial detention based upon a mistaken arrest pursuant to a facially valid warrant[2], the Supreme Court's decision in *Baker v. McCollan,* 443 U.S. 137 (1979) provides the proper analytical framework under which the Plaintiff's claims are analyzed. *Baker* analyzed such a claim under the Fourteenth Amendment, not the Fourth Amendment.[3] 443 U.S. at 142-145. And in *Robins v. Harum,* 773 F.2d 1004 (9th Cir. 1985), the Ninth Circuit held that a Fourth Amendment seizure continues only while the arrestee is in the custody of the arresting officers. *See also Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001) ("the loss of liberty caused by an individual's mistaken incarceration 'after the lapse of a certain

---

[2] Plaintiff does not allege that the warrant was facially invalid; rather, he claims only that he was not the person named in, or sought by, the warrant.

[3] While there were no Fourth Amendment claims in *Baker*, the Court held that such a claim was not available because the warrant pursuant to which plaintiff was arrested provided sufficient probable cause. 443 U.S. at 145.

amount of time' gives rise to a claim under the Due Process Clause of the Fourteenth Amendment.") Plaintiff fails to state a claim arising under the Fourth Amendment and these allegations must be dismissed.

**V.     Counts Ten, Nineteen, and Twenty of Plaintiff's First Amended Complaint Fail to State a Claim for *Monell* Policy or Custom Violations for Which Sheriff Penzone can be Liable.**  A local governmental unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). To state a claim against a municipality or an official of such in his official capacity, a plaintiff must demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit. *See Brown*, 520 U.S. at 403; *Monell*, 436 U.S. at 690-91; and *Fogel*, 531 F.3d at 834. To make this showing, a plaintiff must demonstrate that (1) he was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep' t of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). For a government official to be liable in his official capacity, a plaintiff must allege injuries resulting from a policy, practice, or custom of the agency over which that individual has final policy-making authority. *See Cortez v. County of Los Angeles,* 294 F.3d 1186, 1188 (9th Cir. 2002). For purposes of this motion, Sheriff Penzone does not dispute that he has final policy-making authority for the MCSO.

Sheriff Penzone has established several policies for the jail intake process; *see* Exhibit 1: Policy DO-1 "INTAKE PROCESS;" Exhibit 2: Policy DO-3 "IDENTIFICATION PROCESS;" Exhibit 3: Policy DO-5 "SUMMONS BOOKINGS;" Exhibit 4: Policy GJ-15 "WARRANT CONFIRMATION AND SELF-SURRENDER

REQUESTS BY A CITIZEN;" Exhibit 5: OIC [Operation Information Center] Training Manual; and Exhibit 6: Warrant Process Training Manual. The court may consider these policies and manuals in ruling on this Motion and doing so will not convert this 12(b)(6) motion into a motion for summary judgment. Under the "incorporation by reference" doctrine, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1160 (9th Cir. 2012) (citing *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002)) A court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Letizia v. Facebook Inc.,* 267 F. Supp. 3d 1235, 1241 (N.D. Cal. 2017) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003)) A court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Davis*, 691 F.3d at 1160. Here, Plaintiff's First Amended Complaint extensively references the Sheriff's policies and they are thus incorporated by reference into the First Amended Complaint and may be considered by the Court in conjunction with this motion.

Whether the Sheriff's policies were followed in this case (Defendants in no way concede that the policies were not followed) is an issue that will be decided by the trier of fact and is not a matter to be decided in this motion. Rather, the issue presented is whether the Sheriff has established constitutionally sound intake policies and procedures. Plaintiff's First Amended Complaint makes only vague and conclusory allegations about the policies and thus fails to state a claim. For instance, at ¶78, Plaintiff alleges that the Sheriff's policies "virtually ensure that innocent persons arrested on warrants will be received into and detained by the sheriff's department because the policies delegate to the arresting agency all responsibility for obtaining and investigating identifying information and

characteristics." Plaintiff fails to allege how/why this, if accurate, is constitutionally infirm.

In Count Nineteen, Plaintiff provides details about the booking/identification process and alleges at ¶¶113, 115 that MCSO staff ignored available information that would have confirmed that Plaintiff was not named in the Coconino warrant. If true, and Defendants make no such admission, Plaintiff only states a claim for negligence, not a *Monell* policy claim, and no different result is achieved by Plaintiff gratuitously including the phrase of "deliberate indifference" in ¶¶113 and 117 of the First Amended Complaint.

In Count Twenty, Plaintiff alleges a *Monell* violation without identifying any policy or even using the word "policy" in his assertions. Instead, Plaintiff alleges, at most, that the Sheriff's officers were negligent in failing to tell the Court at Plaintiff's Initial Appearance hearing that Plaintiff was not the object of the Coconino warrant[4]; this does not state a constitutional claim. Plaintiff then alleges that the MCSO officers engaged in "judicial deception" by not telling the Court that Plaintiff was not the target of the Coconino warrant. Plaintiff's theory fails to state a *Monell* claim for several reasons. First, the claim alleges negligence not an unconstitutional policy. Second, Plaintiff's theory incorrectly assumes that any officer accompanying Plaintiff to court had information about the warrant verification and a duty to provide information to the court. Third. judicial deception is inapposite because the claim arises when an officer, <u>when applying for a search warrant</u>, "deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011); *see* also *Newt v. Kasper,* 85 Fed. Appx. 37, 37 (9th Cir. 2003) ("A cognizable judicial deception claim under § 1983 requires [plaintiff] to show that the officer 'made deliberately false statements or recklessly disregarded the truth in the affidavit and that the falsifications were material to the finding of probable cause.'") The warrant that was the basis of the page 2

---

[4] Plaintiff fails to allege that the officers had a duty to inform the Court and Defendant denies that such a duty exists.

charges was ten years old and was issued in Coconino County; MCSO did not apply for the warrant or submit an affidavit with which to obtain the warrant. Judicial deception therefore does not apply. Count Twenty fails to state a claim and must be dismissed.

Further, under the *Ashcroft* and *Twombly* standards, the threadbare, vague and conclusory allegations in Plaintiff's First Amended Complaint fail to state a claim for *Monell*/policy maker liability. Plaintiff has not pled a claim for relief with the vague allegations that the Sheriff "has failed to develop even basic intake policies;" or that the Sheriff's (unnamed and undescribed) policies "virtually ensure that innocent persons arrested on warrants[5] will be received into and detained;" or that the Sheriff's "policies, customs and/or practices demonstrate a deliberate indifference by the Maricopa County Sheriff's Department to the constitutional rights of persons detained by the Maricopa County Jail." The First Amended Complaint lacks factual specificity and must be dismissed because it lacks allegations that state a plausible claim for relief.

The Supreme Court made clear in *Monell* that in addition to an official policy, a municipality may be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the [governmental] body's official decision making channels." 436 U.S at 690–91. Random acts or isolated events are insufficient to establish a custom. *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1996) *Bouman v. Block*, 940 F.2d 1211, 1231 (9th Cir. 1991) and its progeny establish that a plaintiff may proceed in a § 1983 action despite the absence of written authorization or express municipal policy, if a practice is so permanent and well-settled as to constitute a "custom or usage" with the force of law. However, a single instance is not sufficient to show that a "practice is so widespread as to

---

[5] Plaintiff was not arrested on the Coconino County warrant; he was arrested for interfering with judicial proceedings and possession of drugs. The Coconino warrant was discovered by MCSO and resulted in the page 2 charges being added *after* Plaintiff was arrested by the City of Phoenix police officers.

have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997). *See also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), cert. denied, 520 U.S. 1117, 117 S. Ct. 1249, 137 L.Ed.2d 330 (1997) ("[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *Spears v. Arizona Bd. of Regents*, 372 F. Supp. 3d 893, 924 (D. Ariz. 2019) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") and *Webb v. Sloan*, 330 F. 3d 1158, 1164 (9th Cir. 2003) (quoting *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)). ("An isolated incident is ordinarily insufficient to establish a longstanding practice or custom.") Here, rather than describing a longstanding custom, pattern or practice instituted or condoned by the Sheriff, Plaintiff's First Amended Complaint identifies only this incident of an individual retained under a warrant issued for another person with a similar name and the same birthdate. Plaintiff has not identified any other incidents of sufficient duration, frequency, and consistency that the alleged conduct has become a traditional method of carrying out the Sheriff's business. Plaintiff fails to articulate how this isolated incident represents an official longstanding custom or practice of the Sheriff such that it should be considered a policy, and how the "policy" was the moving force behind his injury.

Having failed to properly identify the Sheriff's policy, custom or practice that violated his constitutional rights, Plaintiff has failed to state a claim for relief under *Monell* and Counts 10, 19 and 20 of his First Amended Complaint should be dismissed.

**VI.    Count Nineteen Fails to State a Claim for Failure to Train.** To state a claim for failure to train, a plaintiff must allege facts to support that the alleged failure amounted to deliberate indifference. *Cannell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir.

1998). A plaintiff must allege facts to support that not only was particular training inadequate, but also that such inadequacy was the result of "a 'deliberate' or 'conscious' choice" on the part of the defendant. *Id*. at 1213-14; *see Clement v. Gomez,* 298 F.3d 898, 905 (9th Cir. 2002) (a plaintiff must allege facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is [so] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy[]makers . . . can reasonably be said to have been deliberately indifferent to the need") (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Although Plaintiff haphazardly references a failure to train or inadequate training in Count Nineteen of his First Amended Complaint, he provides nothing more than threadbare recitals and fails to provide any facts or the requisite level of specificity mandated by *Iqbal, Twombly, Cannell, Clement* and *Canton.*  Plaintiff has failed to state a claim for constitutionally infirm training, and the allegations of Count Nineteen must be dismissed.

**VII. Because Plaintiff Cannot Establish That He Was Falsely Imprisoned, He has Failed to State a *Respondeat Superior* Claim Against Sheriff Penzone for the Alleged Tortious Acts of Jail Personnel.**  Under Arizona law, the intentional torts of false arrest and false imprisonment differ only in terminology and are defined as the detention of a person without his consent and without lawful authority. The essential element necessary to constitute either false arrest or false imprisonment is unlawful detention. *Spears v. Arizona Bd. of Regents*, 372 F. Supp. 3d 893, 922 (D. Ariz. 2019) (internal citations omitted) *See Cullison v. City of Peoria*, 120 Ariz. 165, 169, 584 P.2d 1156, 1160 (1978) ("a detention which occurs pursuant to legal authority such as a valid warrant is not an unlawful detention."); *see also Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process.*") (emphasis in original; internal citations omitted). However, "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends

once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* (emphasis in original)

Here, Plaintiff's detention was pursuant to legal process. Plaintiff has not alleged that the warrant pursuant to which he was arrested was facially invalid; rather, although the warrant was valid, Plaintiff was not the person sought by the warrant. When a non-arresting custodial law enforcement agency (here, MCSO) holds a suspect in custody pursuant to a facially valid warrant matching the suspect's description (Plaintiff and Jose Meza Rodriguez shared similar names and identical birthdates), the detention is constitutionally proper as a matter of law. *See Baker, supra* at 145-146. Pursuant to *Baker*, a custodial agency is under no duty to investigate the arrestee's identity, even when the arrestee complains he is not the person wanted by the warrant, and the custodial agency has information in its possession that, if examined, would exonerate the arrestee. *Id*. Holding that the County Sheriff had not caused a deprivation of the plaintiff's constitutional rights, the Supreme Court explained:

> [W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence . . . [n]or is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury. *Id*. at 145-146.

Under *Baker*, where an individual is arrested on a warrant reasonably matching his description, the custodian's *only* duty under the Constitution is to provide the detainee with a speedy court appearance under the Sixth Amendment**.** *Baker*, 443 U.S. at 145-46. Plaintiff was not falsely imprisoned because the Coconino County warrant was legally valid.

Plaintiff's incarceration was pursuant to legal process because he timely appeared in front of a judge to address the charges. The parties do not dispute that Plaintiff made his initial appearances on the local charges (judicial interference and drugs) as well as the page 2 charges set forth in the Coconino County warrant. The parties also do not dispute that the

judge released Plaintiff on his own recognizance on the local charges and ordered him held on a $10,000 bond on the page 2 Coconino County charges. Having been provided with legal process, Plaintiff's incarceration did not constitute false imprisonment.

Because his detention officers did not falsely imprison Plaintiff, Sheriff Penzone does not have *respondeat superior* liability for the officers' actions. Plaintiff has failed to state a claim for common law vicarious liability and his First Amended Complaint must be dismissed.

**VIII. Plaintiff Has Failed to State a Claim for *Respondeat Superior* Liability Against Sheriff Penzone Because Plaintiff Has Failed to State a Claim for Negligence or Gross Negligence Against Jail Personnel.** A plaintiff seeking to establish a claim for negligence must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). Whether a duty exists is a matter of law for the court to decide. *Acri v. State*, 242 Ariz. 235, 238, ¶ 6 (App. 2017). "Duty is defined as an obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson*, 214 Ariz. at 143, ¶ 10 (quotation omitted). Such an obligation may arise from "either recognized common law special relationships or relationships created by public policy." *Quiroz v. Alcoa Inc.*, 243 Ariz. 560, 565, ¶ 14 (2018). Duty is not presumed; in every negligence case, the plaintiff bears the burden of proving the existence of a duty. *Id.* at 563. Duty is based on either special relationships recognized by the common law, or relationships created by public policy. *Id.* In Arizona, our primary source for identifying a duty based on public policy is our state statutes. *Id.* at 566. A statute reflecting public policy may create a duty when a plaintiff "is within the class of persons to be protected by the statute and the harm that occurred ... is the risk that the statute sought to protect against."

*Id.* at 565. In the absence of a statute creating a duty, courts exercise great restraint in declaring public policy. *Id.*

Plaintiff has failed to state a claim for negligence in his First Amended Complaint because neither the Sheriff nor his deputies owe a duty to investigate a pretrial detainee's claims of innocence. The county sheriff is a constitutional county officer with such powers and duties "as prescribed by law." Ariz. Const. art. 12, §§ 3, 4. The statutory duties of the sheriff are listed in A.R.S. § 11–441(A):

> A. The sheriff shall:
> …
> 4. Attend all courts, except justice and municipal courts, when an element of danger is anticipated and attendance is requested by the presiding judge, and **obey lawful orders and directions issued by the judge.**
>
> 5. **Take charge of and keep the county jail, including a county jail under the jurisdiction of a county jail district, and the prisoners in the county jail.**

In addition, A.R.S. § 31-101 provides "The common jails in the several counties and county jails under the jurisdiction of county jail districts shall be kept by the sheriffs of the counties in which they are respectively located. The jails shall be used for detention of persons committed to them in accordance with the provisions set forth in this chapter."

There is neither an Arizona statutory nor common law duty for detention personnel to investigate a pretrial detainee's claims of innocence; to conclude otherwise would impose an onerous burden on detention personnel, especially in the aggregate of multiple inmates claiming to be innocent.  Absent a duty to investigate, the detention personnel cannot be found negligent, and the Sheriff bears no *respondeat superior* liability. Count Twelve of Plaintiff's First Complaint fails to state a claim and must be dismissed.

Plaintiff has also failed to state a claim for gross negligence. Under Arizona law, "[a] party is grossly or wantonly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only

creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Walls v. Ariz. Dep't of Pub. Safety,* 170 Ariz. 591, 826 P.2d 1217, 1221 (Ariz.Ct.App.1991). Plaintiff's First Amended Complaint fails to plead the elements of a gross negligence claim; rather, he provides only conclusory allegations that the unnamed detention personnel were grossly negligent "when they failed to conduct any investigation to ensure that plaintiff was the person named in the [Coconino] warrant." (Doc. 24-1 at ¶85) Plaintiff's threadbare allegation of gross negligence fails to meet the pleading requirements of *Twombly* and *Iqbal* and they must be dismissed.

Moreover, gross negligence, like negligence, requires proof of a duty. *See Hogue v. City of Phoenix*, 240 Ariz. 277, 280, ¶ 11 (App. 2016). Because there is no duty and because his allegations are otherwise deficient, Plaintiff has failed to state a claim for gross negligence. Accordingly, the *respondeat superior* allegation against Sheriff Penzone also fails to state a claim and Count Twelve of Plaintiff's First Amended Complaint must be dismissed.

**IX.    Conclusion.**  Plaintiff's First Amended Complaint fails to state a claim for relief against Sheriff Penzone under federal or state law.  Accordingly, Sheriff Penzone should be dismissed from this action.

**RESPECTFULLY SUBMITTED** this 2nd day of July 2020.

                    ALLISTER ADEL
                    MARICOPA COUNTY ATTORNEY

                    By /s/ Sherle R. Flaggman
                       SHERLE R. FLAGGMAN
                       MAXINE S. MAK
                       Deputy County Attorneys
                       *Attorneys for Defendant Penzone*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2020, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Douglas L. Rayes
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 626
401 West Washington Street, SPC 79
Phoenix, Arizona 85003-2162

Honorable James F. Metcalf
Magistrate Judge
United States District Court
John M. Roll U.S. Courthouse
98 West 1st Street, Suite 2400
Yuma, AZ 85364

Wendy F. White, Esq.
Gary Perlmutter, Esq.
Southwest Center for Equal Justice
1124 Mountainaire Rd.
Flagstaff, AZ 86005
wendy.white@swcej.org
gary.pearlmutter@swcej.org
*Attorneys for Plaintiff*

Sally A. Odegard
HOLLOWAY ODEGARD & KELLY, P.C.
3020 E. Camelback Road, Suite 201
Phoenix, Arizona 85016
sodegard@hoklaw.com
*Attorneys for Defendant City of Phoenix.*
*Chief Williams, and Officers Fuller and Garcia*

Aaron M. Lumpkin Brian Y. Furuya
COCONINO COUNTY ATTORNEY
110 E. Cherry Ave
Flagstaff, Arizona 86001
alumpkin@coconino.az.gov
bfuruya@coconion.az.gov
*Attorneys for Defendant Coconino County Sheriff Jim Driscoll*

/s/ R. Scott

S:\CIVIL\CIV\Matters\CJ\2019\Rodriguez v. City of Phoenix, et al. CJ19-0216 MIDP\Pleadings\20-0702 MTD.docx